The facts of the case were not such as were the facts in *Craddock v. Weekly,* 85 S. C. 329, 67 S. E. 308, and *Devlin v. Devlin,* 89 S. C. 268, 71 S. E. 966, but the principles applicable are those announced by Mr. Justice Hydrick in the last case.

The consideration was a valuable one; the deed was properly executed and delivered; no concealment; a neighbor drew the deed; it was properly witnessed. There is no preponderating evidence of fraud, undue influence, or overpersuading, such as to overreach the father and substitute the judgment of the son for that of the father; in executing the deed the father exercised his will and judgment, and should not, under the evidence, circumstances, and facts, be allowed to repudiate his solemn act.

The exceptions are sustained and judgment reversed.

Mr. Chief Justice Gary and Mr Justice Fraser concur.

Mr. Justice Cothran, (dissenting) : I am satisfied that the findings of the Master, who had all the witnesses before him, concurred in by the Circuit Judge upon the facts and the law of the case, are not overborne by the testimony for the defendant, but are supported by the weight of the testimony.

---

10728

SIMS ET AL v. CAMP CREEK SCHOOL DISTRICT
(109 S. E. 148)

1. Reformation of Instruments—Deed to School District Properly Reformed by Adding Forfeiture Clause.—Where a deed to a school district recited that the land was conveyed for the purpose of erecting a schoolhouse for white children, but it appeared that the district abandoned the school and threatened to sell the land, and that the intention of the parties was that in such case the land should revert, but that a clause to that effect was omitted through mutual mistake, *held* that reformation of the deed by adding such a clause was proper.

2. REFORMATION OF INSTRUMENTS—DEED FOR SCHOOL PURPOSES HELD NOT VOLUNTARY.—As respects the right to reformation, a deed of land to a school district for the purpose of erecting a schoolhouse for white children was not voluntary, where grantor would secure a school on his land for the benefit of his own family, his tenants and his neighbors, thus enhancing the value of his land.

Before McIVER, J., Lancaster, November, 1920. Affirmed.

Action by S. Agnes Sims et al. as heirs at law of J. Bart Sims, deceased, against Camp Creek School District No. 15 of Lancaster County.

From judgment for plaintiffs the defendant appeals.

*Messrs. Williams, Williams & Stewart* and *Jones & Jones,* for appellant, cite: *Long was not trustee de jure*: 80 S. C., 64. *Nor de facto*: 86 S. C., 503. *Contracts with school trustees are made subject to law*: 1 Civ. Code 1912, Secs. 1740, 1753, 1755, 1761, 1764, 1765, 1776. *Dismissal of prayer for injunction is an estoppel of further claim*: 102 S. E., 335; 52 S. C., 166. *Depositions in equity admissible within the discretion of the Court even though there has been no opportunity for cross-examination*: 1 Greenl. Ev. (7th Ed.) 554; 8 Enc. Pl. & Prac. 100. *Reformation of written instruments*: 21 S. C., 232; 44 S. C., 31; 48 S. C., 394; 100 S. C., 157. *Equity abhors forfeiture*: 57 N. E., 422; Pom. Eq., Sec. 816; 11 Paige Chan. 351. *And will not insert condition and then declare forfeiture for such breach*: 47 Wis., 354. *Discretion of school trustees as to location of building will not be interfered with unless there has been a clear abuse*: 103 S. C., 525. *Condition as to permanent location*: 7 Wall, 290. *Laches*: 106 S. C., 310; 90 S. C., 305; 115 S. C., 121.

*Messrs. Harry Hines and John T. Green,* for respondents, cite: *Res adjudicata in actions between the same parties*: 19 S. C., 157; 77 S. C., 499; 98 S C., 185; 110 S. C., 88. *No laches without knowledge*: 106 S. C., 310; 106

S. C., 351. *Reformed deed speaks as of the date of its execution*: 115 S. C., 135; 113 S. C., 322. *Plea of ultra vires not available where other parties have fully performed their part of contract*: 27 A. & E. Enc. L. (1st Ed.), 356, 359, 360, 361, 363, 366, 367; 15 A. & E. Enc. L., 1102, 1104; 103 S. C., 500. *Mutual mistake*: 54 S. C., 582; 57 S. C., 60; 72 S. C., 410; 72 S. C., 362; 35 S. C., 537; 53 S. C., 547; 73 S. C., 241. *Valuable consideration*: 110 S. C., 135.

The decree of the Court below was as follows:

The plaintiffs, as the only heirs at law of J. Bart Sims, deceased, bring this action to reform a deed executed by him to two of the trustees of the defendant on July 29, 1907. The material allegations of the complaint are: That this deed for 1 1-4 acres of land was made by Sims to the school district for the purpose of erecting thereon the scholhouse for the benefit of the white children of that district, which condition was sufficiently expressed in the deed in the following language: "This land is conveyed for the purpose of erecting thereon a public schoolhouse for white children for the benefit of this school district situate in Gills Creek Township." But that it was also agreed between the grantor and grantees that if said district ceased to use said land for the purpose of maintaining thereon a school for white children the land and any buildings thereon should revert to the grantor or his estate, and that this condition was left out of the deed by the scrivener, he and the contracting parties being mutually mistaken in thinking that the language used was sufficient, inasmuch as it specified the use for which the property was conveyed, and that it could not be used for any other purpose than that specifically mentioned. In other words, that the grantor, grantee, and scrivener were all laymen, and did not know that a forfeiting clause was necessary to revert the property to Sims

in the event it should be abandoned for school purposes. Another clause of the deed is, "But if said schoolhouse is not erected within the next three years from date then this deed shall be null and void and title to said land shall remain in said Sims and his heirs." The complaint said further that a schoolhouse was erected on said land in 1911, a public school taught therein until the autumn of 1915, when the defendant abandoned said school and threatened to sell the land and schoolhouse in violation of the rights of the plaintiffs. This action was brought in March, 1916, following a consent demurrer to a complaint in a case between the same parties, asking that the property be declared forfeited on the terms of the deed as it then stood, unless the defendant should continue the school. This action was brought within a few days after the demurrer was consented to in the first case. That demurrer was that the complaint did not state facts sufficient to constitute a cause of action, in that the deed sued on did not contain a forfeiting clause in the event the property was abandoned · for school purposes, but on its face showed the defendant to be the owner in fee.

The defendant admits the execution of the deed, admits its abandonment for school purposes, admits its intention to sell the entire property and use the proceeds thereof elsewhere, contends that it is the owner in fee of the property, and denies that there were any stipulations or agreements between the grantor and grantees other than those mentioned in the deed. It also sets up various special defenses, viz., ultra vires, in that the trustees were without authority to accept a deed with the limitations set out in the complaint; former judgment, in that the demurrer to the first complaint was an adjudication against the plaintiffs of the issues here; statute of limitation, in that the cause of action did not accrue within six years before the commencement of the action; the statute of frauds, in that no writing other

than the deed was signed by either party, stipulating any agreement other than those in the deed; that the complaint does not state mutual mistake as to the facts of the transaction or as to the terms of the deed, and therefore states no equity; and, last, that in the year 1915 the school trustees decided to abandon this schoolhouse and erect a larger one elsewhere in the district as a consolidated school. The plaintiff moved to amend the complaint by more specifically alleging mutual mistake, conforming to the facts proved in certain minor particulars, and striking out a certain clause, to wit, "And especially agreeing to maintain a school thereon," from Paragraph 6, and also moved to strike out from the answer the entire seventh defense on the ground that it is redundant and constitutes no defense. A separate order defines the amendment to the complaint. The motion to strike the seventh defense from the answer is allowed. What the trustees did in 1915 could have no bearing on the agreement between the grantor and grantee in 1907, when the deed was made.

The special defenses herein enumerated are overruled. I do not think any of them go to the real issues in the case, or in any event can affect their decision. What are the issues? What is the law governing their decision? The issues are: Did J. Bart Sims, on July 29, 1907, before and when he signed the deed, say that he was conveying the land for the purpose of the school authorities erecting a schoolhouse thereon for white children, but that if said authorities should cease to use said land for the purpose of maintaining thereon a school for white children the lands and any buildings thereon should revert to him, or in the event of his death to his estate? Did he say that to the scrivener that drew the deed; did he say it to the representative of the defendant there, and did they all believe that the language of the deed expressed the terms of his grant? Without reciting the testimony I hold that it

31—S. C. 117

overwhelmingly proves that Sims made these statements, that the scrivener heard them, that the party de jure and de facto, representing a school district, heard them, and subsequently told the grantor's wife, when she renounced her dower, that the deed fully covered the condition, and that it was the intention to put into the deed the terms necessary to state legally these conditions, and that it was a mistake of Sims, of the scrivener he was not a lawyer and of the person Long, there publicly recognized as representing the district, that they were not put there.

Sims represented himself, who represented the school district? Having accepted the benefit of what he did, can the district repudiate any of his acts, even if detrimental, and retain the benefit secured by him. The plaintiff alleges that M. J. Long was a trustee of the school district, every witness for the plaintiff swears that he was, and that he was everywhere recognized to be such, and Hallman says that he (Long) asked him to see Sims about getting the land for a school; that Sims told him how he would grant the land; that he told Long, and Long agreed to all conditions prescribed by Sims. Long was present when the land was surveyed; he was present when the deed was drawn; he took charge of the deed for the district; if he did not, who did?

The defendant went into possession of the land, the deed was recorded; the defendant brings it into Court. If Long did not represent the school district, who did? The deed was made to W. T. Morris and L. N. Montgomery as trustees. Only two are mentioned; the law requires three. Plaintiff suggests that Long's name was left out because he as a notary intended taking Mrs. Sims' renunciation of dower. Be that as it may, the witnesses testify that he was publicly acknowledged as trustee; that he negotiated the transaction as such. The records in the office of the County Superintendent of Education show

that he was a trustee in the first half of the year 1907; that he was again trusteee in 1908; that he signed pay vouchers in 1907; that the district paid for surveying the land, thus showing ratification of his act in having it surveyed. It is true that the book of trustees, in the office of the County Superintendent of Education, shows that Sims was appointed trustee on July 1, 1907, but A. M. L. Hallman, subsequently a trustee, says that Sims refused to act or that he thinks so. I am forced to the conclusion that Sims refused to serve; that Long, the trustee appearing on the books in 1907, simply held over, and was again formally appointed in 1908. If Sims had served, his term would have been three years; Long's name again appears on the books in 1908. This fact, with Hallman's testimony, indicates that Sims never served at all, but that Long continued to act. The testimony is that neither Morris or Montgomery were present when the deed was drawn; Long was. Montgomery says Sims never met the board of trustees nor acted as one. The law says that they shall at once meet and organize their board. I am therefore of the opinion that Long was de jure or de facto a trustee; that he represented the school district; that he accepted the deed, and that he represented the school district in so doing; and that he and Sims were mutually mistaken in believing that the terms of the deed sufficiently expressed all the conditions of Sims' grant. Montgomery says he never saw the deed until after this action was brought. At the time the schoolhouse was built in 1911, Sims was dead. The trustees were L. N. Montgomery and W. T. Morris, the two named in the deed, and A. M. Hallman, a witness to the deed, and one of the witnesses testifying to Sims' statement when the deed was drawn. Montgomery testified on cross-examination: (a) That he understood before and at the time the schoolhouse was built that Sims had given the land for school purposes for white children only; and (b)

that from reading from the deed he would so construe it, thus showing his understanding of the terms of the grant, and that he would have construed the deed just as Sims and Long did, thus also showing that if he had been present when it was drawn he would have also been mistaken as to the legal import of its terms.   Hallman, the other building trustee, said that he had personal knowledge of the terms of the grant; that he contributed heavily to the building of the house under such knowledge, so that we see that two of the building trustees personally knew of the terms of the grant before the schoolhouse was built in 1911.   The defendant cannot therefore claim that he did not have actual knowledge of what Sims had granted it when it built the house, and until that time it had done no act affecting it in any way.   What was in the deed did not influence Montgomery when the house was built; he had never seen it, Hallman knew what was in it, and believed it expressed the agreement between Sims and Long.  Morris is now dead.   Had he seen the deed?   Long is also dead, but witnesses tell us what he said.

Having concluded that Long represented the district, and that he and Sims were mutually mistaken in believing that the deed expressed the agreement between them, ought the deed to be reformed?   I so hold. The law is clear as laid down in the following authorities: *Byrd v. O'Neal,* 106 S. C., 348, 91 S. E., 293; *Cook v. Knight,* 106 S. C., 310, 91 S. E., 312; *Hutchison v. Fuller,* 67 S. C., 284; 45 S. E., 164; *Forrester v. Moon,* 100 S. C., 157, 84 S. E., 532; *Austin v. Hunter,* 85 S. C., 472, 67 S. E., 734; *Brock v. O'Dell,* 44 S. C., 22, 21 S. E., 976; *Sullivan v. Moore,* 92 S. C., 307, 75 S. E. 497; *Hopkins v. Mazyck,* 1 Hill, Eq. 250; *Desell's Ex'rs. v. Casey,* 3, Desaus. 34; Amer. & Eng. Enc. Law, 1st Ed. Vol. 15, 638, and cases cited in notes; 2 Pom. Eq. Jur. § 1376; Amer. & Eng. Enc. Law (1st Ed.) Vol. 20, 713, and cases cited 714-716,

and 770. *Railway v. Jones,* 73 Miss. 110, 19 South, 105
55 Am. St. Rep. 492; *Lawrence v. Beaubien,* 2 Bailey,
623, 23 Am. Dec. 155; *Lowndes v. Chisolm,* 2 McCord,
Eq. 455, 16 Am. Dec. 667; *Cunningham v. Cunningham,*
20 S. C. 319. *The evidence is competent to reform the
deed:* Marshall v. Railway, 73 S. C., 241, 53 S. E., 417;
*Earle v. Owings,* 72 S. C., 362, 364, 51 S. E., 980; *Whitman v. Corley,* 72 S. C., 410, 52 S. E. 49.

The deed here is not a voluntary one. There were certain stipulations and agreements moving Sims to its execution; among them the securing of a school on his land for the benefit of his own family, his tenants and his neighbors, thus enhancing the value of his land and benefiting him in various other ways. In the absence of these benefits, it is inconceivable that he would have carved out 1 1-4 acres of his most valuable land on the public highway, his most desirable house seat, and given it to the school district so that it could abandon the school at its pleaure and sell the land to any one for any purpose the purchaser might see fit to use it. He would not knowingly have assumed the risk of having a gin or a mill or a negro dwelling placed upon his farm in such a prominent and desirable location.

I am of the opinion that the plaintiffs are entitled to the relief demanded in the complaint as to the reformation of the deed. It is therefore on motion of J. Harry Hines, plaintiffs' attorney, ordered, adjudged, and decreed that the said deed, to wit, that executed by J. Bart Sims to W. T. Morris and L. N. Montgomery, trustees, on July 29, 1907, and recorded in Deed Book Q, p. 117, in the office of R. M. C. for Lancaster County, be, and the same is hereby, reformed by adding after the clause therein, "This land is conveyed for the purpose of erecting thereon a public schoolhouse for white children for the benefit of this school district situated in Gills Creek Township," the following

additional clause: "Provided that if said school district shall ever cease to use said land for the purpose of maintaining thereon a public school for white children in said school district, then and in such event the title to said land and all buildings thereon shall thereby immediately revert to me or, in the event of my death, to my estate"—and that there be added to the habendum clause of said deed the following: "For the uses and purposes herein mentioned and no other." Ordered, further, that Clerk do enter upon the record of the said deed the judgment of this Court that it is reformed as herein ordered.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This Court is entirely satisfied with the conclusions of the Circuit Judge, and for the reasons assigned by him the decree is affirmed.

---

## 10732

### STATE v. TURNER *ET AL*

#### (109 S. E. 119)

1. HOMICIDE—ON FAILURE TO CONNECT ACCUSED WITH KILLING HIS CONDUCT AFTERWARD CANNOT CONVICT HIM.—In prosecution for murder on failure to connect the accused with the actual killing or to show that he was present, aiding and abetting, his conduct after the homicide cannot convict him.

2. CRIMINAL LAW—ACQUITTAL SHOULD BE DIRECTED WHERE EVIDENCE IS INSUFFICIENT.—Where, admitting as true every fact and circumstance relied on by the State without reference to whether it was competent or not, there was not sufficient evidence to warrant conviction. a verdict of not guilty should have been directed.

3. CRIMINAL LAW—STATEMENT OF ACCUSED, THROWING LIGHT ON SUBJECT OF TRIAL, IS COMPETENT AGAINST HIM.—Any statement made by any of defendants, even though he did not admit commission of the crime. is competent as against the party making it, if it throws any light on the subject being tried, and elucidates the subject-matter of the trial.